**THE FRED SMARTLEY, JR.**
**THE CYRENE.**
**THE CARL D. COLONNA.**

**S. C. LOVELAND CO., Inc., et al. v. PENN-SYLVANIA SUGAR CO. et al.**

**NORFOLK LIGHTERAGE CO., Inc., v. SAME.**

**Nos. 4380, 4381.**

Circuit Court of Appeals, Fourth Circuit.
Jan. 9, 1939.

Howard M. Long, of Philadelphia, Pa., and Lester S. Parsons, of Norfolk, Va., for S. C. Loveland Co.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for Norfolk Lighterage Co., Inc.

Leonard J. Matteson, of New York City (Richard F. Shaw, of New York City, Braden Vandeventer, of Norfolk, Va., Bigham, Englar, Jones & Houston, of New York City, and Vandeventer & Black, of Norfolk, Va., on the brief), for Pennsylvania Sugar Co.

Before NORTHCOTT and SOPER, Circuit Judges, and H. H. WATKINS, District Judge.

NORTHCOTT, Circuit Judge.

These are appeals from a final decree in admiralty entered in the District Court of the United States for the Eastern District of Virginia, at Norfolk. On August 13, 1936, one of the appellees, Pennsylvania,

Sugar Company, a Pennsylvania corporation, filed a libel against S. C. Loveland Company, Inc., a Delaware corporation, and the barge Fred Smartley, Jr. The object of the libel was to recover damages done to a cargo of sugar, owned by the libelant, shipped on the barge, which damage was alleged to have been caused by a marine disaster that occurred in Chesapeake Bay the morning of November 24, 1935. The Loveland Company answered the libel and filed a petition impleading the steamtug Carl D. Colonna and asking that her owner be required to answer the claim for damages. The Norfolk Lighterage Company, a Virginia corporation, owner and operator of the tug Colonna, filed a petition for limitation of liability, to which petition both the Sugar Company and the Loveland Company filed answers. The two causes were consolidated and heard together.

After hearings, at which all the witnesses but one were heard in open court and after argument, the trial judge on November 3, 1937, filed a written opinion in which he made findings of fact and reached the conclusion, as a matter of law, that the Loveland Company, the barge Fred Smartley, Jr., and the tug Colonna were liable to the Sugar Company for the damages, the amount of which was stipulated, and that the petition for limitation of liability as to the tug Colonna should be granted.

A decree in accordance with the opinion was entered on March 19, 1938. From this action of the court below these appeals were brought by the Loveland Company and the Norfolk Lighterage Company.

The cargo of sugar was loaded on the barge Smartley in Philadelphia, and the barge was towed to Baltimore. The shipment was made under an oral contract of carriage entered into between the libelant and the Loveland Company, owners of the barge. The barge Smartley, a steel vessel 190 feet long, 23.1 feet beam and 11 feet deep, was towed from Philadelphia to Baltimore by a tug supplied and furnished by the Loveland Company. The Smartley was not equipped with engines and had a crew consisting of a licensed master and two seamen. The wife of one of the members of the crew was also aboard. At Baltimore the Smartley was taken in tow by the tug Colonna. In addition to the Smartley, which was the head barge of the flotilla, three wooden barges, the Nanticoke, the Roseina, and the Pacific, in the order named, were attached behind her. The tug and tow left North Point, Maryland, on the morning of November 23, 1935, and about 3 o'clock the following morning, when the flotilla had reached a point off the mouth of the Potomac River, the towing hawser between the tug and the Smartley parted. This resulted in a collision between the barges Smartley and Roseina, the Nanticoke and the Pacific drifting clear. The crew of the Smartley abandoned her and went aboard the Roseina. The Smartley and the Roseina lay together, pounding each other for a considerable period of time, causing serious damage to the Smartley, breaking in her steel house, smashing thirty feet of her rail, bending her water-ways, and causing damage below her water line as well as carrying away her boat and davits.

The three wooden barges anchored but the Smartley drifted until between 9 and 10 o'clock the morning of the accident when the Colonna succeeded in getting a line fast to her and towed her into the Great Wycomico River and beached her at Cockrell's Creek, where she was pumped out and temporarily repaired. The cargo of sugar was badly damaged. It was claimed on behalf of the Loveland Company that the tug damaged the Smartley in beaching her by dragging her over some submerged piling.

At the time the tug and tow left Baltimore there were no storm warnings displayed and there was only a strong breeze from north-northwest, blowing down the bay. This was a favorable wind for the voyage. At the time of the parting of the hawser the witnesses fixed the velocity of the wind at, not over, eighteen to twenty miles an hour. This is admitted, by all the parties, to be not an unusual condition and is described, according to the Beaufort Scale, as a "moderate breeze".

Under the limitation of liability allowed on motion of the owners and operators of the tug Colonna that vessel was sold for the sum of $8,100, and that sum, less costs, was paid into court.

Two questions are presented for consideration; first, was the Loveland Company liable for the damage to the cargo of the Smartley? and, second, was the tug also liable for the damage?

As to the first question we are of the opinion that the court below was right in holding the Loveland Company liable, for a number of reasons. Under the contract, between the Loveland Company and the libelant, the former undertook, subject to the usual conditions of bills of lading, to

transport the cargo to its destination. The contract was one of affreightment (Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663) and established the relationship of shipper and carrier. This relationship was not changed by any agreement, express or implied, and was not changed by the fact that the Loveland Company, for its own convenience or as a matter of economy, chose to have the voyage completed from Baltimore by the tug Colonna, with the operators of which it made a contract of towage.

As was said by the court in Tice Towing Line v. James McWilliams Blue Line, D. C., 51 F.2d 243, 246: "If the coal cargoes had been lost or damaged and the owner of the barges had been sued for such loss or damage, it could not have defended by alleging and proving that the loss or damage was due to the negligence of the tug which it had engaged to help it perform its contract to carry the cargoes." (Citing cases.) See, also, Bulkley v. Naumkeag Steam Cotton Co., 65 U.S. 386, 24 How. 386, 16 L. Ed. 599; Colton v. New York & Cuba Mail Steamship Co., 2 Cir., 27 F.2d 671; Smith v. Booth, 2 Cir., 122 F. 626; The Robert R., 2 Cir., 255 F. 37.

■■ The Loveland Company, as carrier and also as owner of the barge Smartley, was responsible for the seaworthiness of that barge. The judge below found as a fact that the Smartley was not seaworthy and the finding on this point is not only supported by substantial evidence but by the great weight of the testimony. It was proven that there were two leaks through which the Smartley took the water that damaged the cargo. The evidence shows that the larger of these leaks, the one on the starboard side, could not have been caused by the rubbing of the Roseina against the Smartley but was the result of the extreme thinness of the Smartley's plates resulting from corrosion, a condition that could have been discovered by proper inspection. The trial judge found that the after port quarter of Roseina came in contact with the after port quarter of the Smartley in which position they remained until the Smartley drifted away and that the pounding of the vessels, the Smartley being loaded and low in the water, the Roseina being light and high in the water, smashed a substantial part of the Smartley's superstructure and probably reopened the leak in the Smartley's port corner plate but could not have caused the leak in the starboard side of her transom plate.

Before the trial below repairs on the Smartley were made by the Loveland Company at a time when it was known that there would be litigation involving the seaworthiness of the Smartley, yet the plates cut out in making the repairs were not preserved. When representatives of other litigants inspected the barge at a dock in Philadelphia, following the catastrophe, the representatives of Loveland Company showed slight inclination to cooperate with them in their examination. While five pictures of the Smartley were introduced in evidence by Loveland Company none of them showed the damaged transom plates. Pieces of metal said to have been taken from the transom plate were introduced in evidence to show its extreme thinness.

The action of the master and crew of the Smartley in precipitately abandoning the barge, without anchoring her, following the parting of the hawser, was not justified. It was also their duty to watch the end of the hawser attached to the barge. Had this been done signs of the parting of the hawser would probably have been observed before the hawser actually parted.

It is not necessary to cite authorities to support the conclusion that Loveland Company was responsible to the libelant sugar company if the barge Smartley were unseaworthy or if her crew were negligent. The Smartley was unseaworthy and her crew was negligent.

As to the second question the judge below found that the tug Colonna was seaworthy, that her equipment was adequate for the voyage, under circumstances ordinarily to be expected; that the captain of the tug handled her in a seamanlike manner and that there was no negligence in the handling of the Smartley when that barge was picked up and beached. The court, however, held the tug liable for the sole reason that the captain left the harbor, at North Point, under weather conditions that should have warned him not to undertake the voyage.

We find in the record substantial evidence to support these findings as to the seaworthiness of the tug and equipment also as to the proper navigation of the tug but we can find no evidence whatever to support the finding that weather conditions were such as to prohibit the tug from leaving the harbor.

■■ The evidence shows that at the time of departure from Baltimore there was only a strong breeze blowing down the bay. No

storm warnings were showing and at no time until the catastrophe occurred was there encountered a wind of much greater velocity than twenty miles an hour. The official weather reports showed a wind velocity of from eighteen to twenty miles an hour. The advisability of leaving port under the conditions that existed was left to the judgment of the master of the tug alone and that the decision made by him was within the range of discretion properly allowed to him cannot be successfully disputed.

"The Herkimer's departure from Brewerton must be judged by the conditions which existed at the time her master decided to set out upon the voyage, not by what later developed. * * * At that hour there were no observable conditions to indicate danger. This was not a case of disregarding storm warnings, as in Larsen v. Cahill Towing Line, [2 Cir.], 6 F.2d 982. * * * But we know of no obligation on a master to tie up for three hours to await a weather report, or indeed to make any inquiries, before embarking upon a voyage of only a few hours' duration, when all observable conditions are favorable at the time of departure. [Citing cases.] Under conditions existing when he set out, we find that the master was justified in his decision to proceed." The Herkimer, 2 Cir., 52 F. 2d 41, 42.

"Judging as we now can, it would probably have been better to take the chances of the turn into Huntington or Cold Spring, though even that is not certain. But we cannot charge a master because it seems to us, who were not there, that another choice would have been better. Only in case his conduct is outside the range of possible discretion, may we hold him for lack of seamanship; error to become fault must be gross and flagrant. [Citing cases.] It seems to us that, if error there was, it was one which lay within the discretion of capable seamen." Frank Jacobus Transportation Co. v. Moran Towing & Transportation Co., Inc., 2 Cir., 67 F.2d 603, 605. See, also, Shaw v. Dempsey Sons Barge Co., 3 Cir., 47 F.2d 820.

As was said in the case of The Lizzie D. Shaw, The Rob Roy and Howard E., D. C., 15 F.Supp. 727, 730: "If every time a wind out of the north, northeast of the force shown, not accompanied by storm warnings were to be deemed to present a hazard to south-bound coastwise navigation, those who follow the sea in these parts would spend much of their time ashore."

It is significant that neither in the oral argument or the briefs filed before us was any attempt made to sustain the finding of the court below holding the master of the tug at fault for leaving Baltimore under the weather conditions that existed at the time of the flotilla's departure. We find substantial evidence supporting all the findings of the court below except this one.

We are of the opinion that that part of the decree giving libellant Pennsylvania Sugar Company recovery against the barge Smartley, respondent S. C. Loveland Company and the bond given for the release from attachment of the barge Smartley and tug Cyrene must be affirmed but that part of the decree giving recovery against the tug Colonna must be reversed.

In view of our conclusions it is not necessary to pass on the motion of the Norfolk Lighterage Company to strike portions of the briefs filed by the Sugar Company and the Loveland Company.

Modified.