**THE FRED SMARTLEY, JR.**
**S. C. LOVELAND CO., Inc., et al. v.**
**PENNSYLVANIA SUGAR CO.**

**No. 4553.**

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1940.

James J. Lenihan, of Washington, D. C. (Forrest E. Single, of New York City, and Lester S. Parsons, of Norfolk, Va., on the brief), for appellants.

T. Catesby Jones, of New York City (Leonard J. Matteson, Richard F. Shaw, and Bigham, Englar, Jones & Houston, all of New York City, and Vandeventer & Black, of Norfolk, Va., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and COLEMAN, District Judge.

PARKER, Circuit Judge.

This is an appeal from a decree dismissing a petition for limitation of liability. The appellant is the owner of the barge Fred Smartley, Jr., upon which a cargo of sugar was shipped by the Pennsylvania Sugar Company in November 1935. The cargo was damaged as a result of the unseaworthiness of the barge, and this court affirmed a decree of the District Court awarding damages to the shipper on the ground that the barge was unseaworthy at the inception of the voyage. The Fred Smartley, Jr., 4 Cir., 100 F.2d 971. The court below denied limitation of liability on two grounds: (1) that, as the shipment was made pursuant to a personal contract containing an implied warranty of seaworthiness, the owner of the barge was not entitled to limit liability; and (2) that the petition for limitation of liability was not filed within the time required by statute.

The facts are that the shipment was made pursuant to an oral contract between the shipper and the president, and owner of 90% of the stock, of the corporation that owned the barge. Bill of lading covering the shipment was issued by the vice president and was in the usual form of bills, approved by the Interstate Commerce Commission, covering either rail or water transportation. It contained the following provisions as sec. 9(a): "If all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to all the terms and provisions of, and all the exemptions from liability contained in, the Act of the Congress of the United States, approved on February 13, 1893 [46 U.S.C.A. § 190 et seq.], and entitled 'An Act relating to the navigation of vessels, etc.,' and of other statutes of the United States according carriers by water the protection of limited liability, and to the conditions contained

in this bill of lading not inconsistent therewith or with this section."

The shipper filed written claim of loss and damage with the owner on April 18, 1936 and filed libel to recover same August 13, 1936. The owner did not file petition for limitation of liability until March 11, 1939, notwithstanding the passage of the statute approved June 5, 1936, limiting to six months after the filing of written notice of claim the time within which the owner might petition for limitation of liability.

On the first question, the learned counsel for appellant properly makes the following admission in his reply brief, which serves to greatly narrow the controversy, viz.: "We concede that the question of liability between petitioner and appellee is res adjudicata. We likewise concede that there was an implied warranty of seaworthiness in the contract of carriage herein, and that it is res adjudicata between the parties that the barge 'Smartley' was unseaworthy, and that due diligence had not been exercised to make her seaworthy. We further concede that the contract of carriage involved herein was a personal contract of the S. C. Loveland Company, Inc."

On the first question, therefore, the question is: Does the language of the bill of lading above quoted give to the owner the right to limit liability as against a liability arising from the breach of a warranty of seaworthiness contained in a personal contract of the owner? We think not. The manifest purpose of the language quoted is to preserve to the owner, as an exception to the common law liability assumed in sec. 1(a) of the bill of lading, the rights accorded by the limitation of liability statutes of the United States. 46 U.S.C.A. § 181 et seq. The exception, manifestly, confers no right to limit liability unless such right is given by the statutes therein referred to; and these statutes confer no such right as against a liability arising out of a breach of the warranty of seaworthiness contained in the personal contract of the owner. Cullen Fuel Co. v. W. E. Hedger Co., Inc., 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189; Capital Transportation Co. v. Cambria Steel Co., 249 U.S. 334, 39 S.Ct. 292, 63 L.Ed. 631.

The position of appellant is not helped by the argument that only where there is privity and knowledge on the part of the owner is he denied limitation of liability under the statutes; for privity and knowledge of unseaworthiness, where it exists, are imputed to the owner in the case of a personal contract containing an express or implied warranty of seaworthiness. In the Soerstad, D.C., 257 F. 130, cited by the Supreme Court in Cullen Fuel Co. v. W. E. Hedger Co., supra, Judge Learned Hand went into the matter fully, saying:

"A warranty is a promise that a proposition of fact is true. Theoretically it is extremely difficult to interpret it otherwise than as a promise to make whole the warrantee, if the warranty turns out to be false, since a promise is normally a stipulation for some future conduct by the promisor. If it is so regarded, then clearly the breach of warranty is with the warrantor's privity, for by hypothesis he has deliberately refused to make whole the warrantee. However, it must be conceded that the law regards the breach as arising at once if the warranty be false, and the warrantee's loss as damages, not as a condition for the warrantor's performance. So viewed, the warrantor has misled the warrantee by falsely assuring him of the truth through the warranty, and the wrong consists of the assurance, the warrantee's reliance upon it, and his loss; just as in cases of deceit, except that no scienter is necessary. And so the action on warranty was originally 'a pure action of tort' (Ames, History of Assumpsit, 2 Harv.L.R. 1, 8), and arose a century before action on the case for assumpsit. The action sounded indeed in deceit (Y. B. 11 ed. IV, 6, plac. 11), and it was not till 1778, in Stuart v. Wilkins, 3 Doug. 118, that assumpsit appears to have been used on a seller's warranty.

"Regarded in this way, which is probably the correct way historically, it follows inevitably that a breach of warranty should be held to be with the warrantor's privity, because all the elements of the cause of action are 'done, occasioned, or incurred' by him personally; that is to say, he personally gives the false assurance, he intends the warrantee to rely upon it, and the loss arises from the mistaken reliance, as he knows it will. Thus he personally occasions the loss."

The Yungay, D.C., 58 F.2d 352 is authority to the contrary; but a careful reading of the opinion therein leads to the conclusion that the learned judge who decided that case ignored the basis upon which privity and knowledge of unseaworthiness are imputed to the owner in the

case of a personal contract. As pointed out by Judge Hand, the owner is charged with privity and knowledge of the unseaworthy condition because of the warranty of seaworthiness implied in his contract; and the statutes do not give the right to limit liability where the owner is thus charged with privity and knowledge of the unseaworthy condition. It is difficult to see, therefore, how the fact that the protection of the statutes was reserved by the provisions of the bill of lading could avail an owner so charged with privity and knowledge of unseaworthiness. Certainly the reservation of rights accorded by the statutes cannot result in conferring upon him greater rights than the statutes themselves afford.

And we agree with the court below that the petition for limitation of liability was filed too late in any event. Of course, the limitation of liability statutes conferred a right upon the owner and not a mere remedy. The statutes of Aug. 29, 1935 and June 5, 1936, 46 U.S.C.A. §§ 183, 183b, 183c, 185, 188, made certain substantial changes in the right accorded by preceding statutes; and it would seem that, with respect to such changes, these modifying statutes are to be accorded only prospective operation and are not to be applied to rights existing at the time of their enactment. The Pocahontas, D.C., 20 F.Supp. 1004. The Act of 1936, however, in addition to making these changes as to substantive right, imposed a time limit upon the exercise of the right to limit liability by petition and surrender of the vessel and freight accorded by R.S. § 4285, 46 U.S.C.A. § 185; and we think that this limit is applicable to the exercise of such right by petition and surrender, whether the right was in existence prior to the enactment of the Act of 1936 or not. In the case of a right existing prior to the enactment of that statute, however, the time allowed, if claim had already been filed, should be computed, not from the filing of the claim, but from the date of the passage of the statute, when right to limit liability was first subjected to the limitation therein contained. The question presented is whether a statute limiting generally the time for assertion of rights is to be applied to rights existing at the time of its enactment. In answering this question, distinction must be made between cases where there was already a statute of limitations in existence at that time and cases where there was no such statute, as this is a vital matter to be considered in determining the legislative intent. Compare Sohn v. Waterson, 84 U.S. 596, 21 L.Ed. 737, with United States v. St. Louis etc. R. Co., 270 U.S. 1, 46 S.Ct. 182, 70 L.Ed. 435.

Prior to the statute of 1936, there was no time limit for filing the petition for limitation of liability. The owner might wait until after judgment was had against him. Larsen v. Northland Transportation Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096. That statute, as stated, amended R.S. § 4285 so as to require petitions for limitation of liability to be filed within six months after the filing of written notice of claim, the purpose of the amendment being to require the owner to act promptly if he desires to limit his liability. The Grasselli Chemical Co., No. 4, D.C., 20 F.Supp. 394. The statute does not expressly state whether or not the limitation thus incorporated in the law should apply to rights to limit liability existing at the time of its passage; but, as such rights were not expressly excluded and no other limitation statute was applicable, we think that the reasonable construction is that the limitation was intended to apply to them as well as to rights subsequently accruing. There were cases, no doubt, where there was liability on the part of the owner but no claim had been filed at that time. There were other cases, as here, where claim had been filed but no petition for limitation of liability filed. We see no reason why Congress should have intended to exempt such cases from the limitation prescribed by the amendment and leave them subject to no limitation whatever. Where claims had not been filed, the six months period would run from the filing of the first claim, just as in cases where liability accrued after the passage of the statute. Where as here claim had been filed, the six months period would run from the passage of the act.

Sohn v. Waterson, supra, 84 U.S. 596, 599, 21 L.Ed. 737, is, we think, directly in point. In that case a statute of Kansas prescribed a two year statute of limitations for suit upon foreign judgments. This statute was held to bar suit on such a judgment brought more than two years after the passage of the statute although the judgment had been obtained prior to its passage and the statute made no reference to existing causes of action. The court said:

"A statute of limitations may undoubtedly have effect upon actions which have already accrued as well as upon actions which accrue after its passage. Whether it does so or not will depend upon the language of the act, and the apparent intent of the legislature to be gathered therefrom. When a statute declares generally that no action, or no action of a certain class shall be brought, except within a certain limited time after it shall have accrued, the language of the statute would make it apply to past actions as well as to those arising in the future. But if an action accrued more than the limited time before the statute was passed a literal interpretation of the statute would have the effect of absolutely barring such action at once. It will be presumed that such was not the intent of the legislature. Such an intent would be unconstitutional. To avoid such a result, and to give the statute a construction that will enable it to stand, courts have given it a prospective operation. In doing this, three different modes have been adopted by different courts. One is to make the statute apply only to causes of action arising after its passage. But as this construction leaves all actions existing at the passage of the act, without any limitation at all (which, it is presumed, could not have been intended), another rule adopted is, to construe the statute as applying to such existing actions only as have already run out a portion of the statutory time, but which still have a reasonable time left for prosecution before the statutory time expires—which reasonable time is to be estimated by the court—leaving all other actions accruing prior to the statute unaffected by it. The latter rule does not seem to be founded on any better principle than the former. It still leaves a large class of actions entirely unprovided with any limitation whatever, or, as to them, is unconstitutional, and is a more arbitrary rule than the first. A third construction is that which was adopted by the court below in this case, and which we regard as much more sound than either of the others. It was substantially adopted by this court in the cases of Ross v. Duval [13 Pet. 45, 10 L.Ed. 51] and Lewis v. Lewis [7 How. 776, 12 L.Ed. 909]. In those cases certain statutes of limitation—one in Virginia and the other in Illinois—had originally excepted from their operation non-residents of the State, but this exception had been afterwards repealed; and this court held that the non-resident parties had the full statutory time to bring their actions after the repealing acts were passed, although such actions may have accrued at an earlier period. 'The question is,' says C. J. Taney (speaking in the latter of the cases just cited), 'from what time is this limitation to be calculated? Upon principle, it would seem to be clear, that it must commence when the cause of action is first subjected to the operation of the statute, unless the legislature has otherwise provided'."

See also American Mut. Liability Ins. Co. v. Lowe et al., 3 Cir., 85 F.2d 625.

We do not think that such a construction of the statute amounts to giving it a retroactive effect. The limitation is applied not to divest vested rights or to invalidate proceedings theretofore had, or to affect in any way conditions existing prior to its enactment, but merely to limit the time within which existing rights may be asserted. The fact that such rights may have accrued prior to the passage of the statute does not give to the owner, as a matter of right, an unlimited time within which to assert them; and there is just as much reason why Congress should apply a time limitation upon their assertion as upon the assertion of rights subsequently accruing. Under such circumstances the fact that Congress made no exception with respect to existing rights raises a strong presumption that it intended to make none. Wrightman v. Boone County, 8 Cir., 88 F. 435; 37 C.J. 694-695. If liability had accrued prior to the passage of the act but no claim had been filed prior thereto, it would seem clear that the statute should be construed to limit the filing of petition to six months after the filing of claim. If this be correct, it would not seem reasonable that no limitation should apply merely because a claimant had filed claim prior to the passage of the act.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.