**BOOTH BOTTLING COMPANY, INC.,**
**Plaintiff,**

v.

**BEVERAGES INTERNATIONAL,**
**INC., et al., Defendants.**

**Civ. A. No. 70–1510.**

United States District Court,
E. D. Pennsylvania.

July 17, 1973.

Theodore W. Flowers, White & Williams, Philadelphia, Pa., for plaintiff Booth Bottling Co., Inc.

Benjamin M. Quigg, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for Beverages International, Inc. and Crush International, Inc.

Stephen E. Angstreich, Mann & Ungar, Philadelphia, Pa., for Canada Dry and Pepsi Cola.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

Presently before this Court is a complex anti-trust case in which two Motions have been submitted for ruling. One submitted by the Plaintiff, Booth Bottling Company, Inc. (hereinafter "Booth"), requests this Court grant partial summary judgment on count 1 of the above captioned Complaint. The second Motion, submitted by Beverages International, Inc., (hereinafter "Beverages"), and Crush International, Inc., (hereinafter "Crush"), is a request to dismiss count 3 of the above captioned case as to Defendants' "Beverages" and "Crush" only. The Court will consider the Motion for partial summary judgment first after a short discussion of the history and facts in this case.

## I. DISCUSSION OF THE FACTS

The Plaintiff filed its Complaint in 1970 under Section 4 of the Act of Congress, October 15, 1914, 15 U.S.C. § 4, alleging violations of §§ 1, 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; and § 7 of the Clayton Act, 15 U.S.C. § 18. "Booth" is also alleging a breach of contract in count No. 4 of an alleged sub-franchise agreement. The only count which we are concerned with in the Motion for Partial Summary Judgment is count 1, which alleges a violation of § 1 of the Sherman Act.

The facts in this case indicate that "Beverages" is the owner of a product and trademark called Hires Root Beer. "Beverages" contracts to various bottlers and distributors throughout the country the right to bottle and distribute their product. "Beverages" contracts to sell the syrup to the bottler distributor who then manufactures and distributes the product under the Hires label. In this case there is a franchise agreement, included in the Brief of the Plaintiff "Booth", which indicates that there was an agreement between "Beverages" and Pepsi-Cola Bottling Company of Pennsauken (hereinafter "Pepsi") to manufacture and distribute Hires Root Beer within a certain designated area in the Delaware Valley of New Jersey, Delaware and Pennsylvania. What control "Beverages" maintains over the final product is unknown to this Court. As the defendant "Beverages" owns the trademark, there must be some control of the product sold under the trademark as far as quality and other standards are concerned. The remainder of any facts which are known to the Court at this time will be developed as it rules on the two Motions which are before it.

At this time discovery is essentially complete and the parties are prepared for trial. The Court in effect has the full discovery record before it but it does not have a full trial record which it feels is an essential ingredient in a determination of a complex anti-trust case such as this one.

## II. VERTICAL INTEGRATION

"Booth" has submitted to this Court a Motion for Partial Summary Judgment on Count 1 in which the main thrust of the argument is that there is a *per se* violation of the Sherman Act because the defendants "Beverages" and "Crush" have placed vertical restrictions on the sale of the product, Hires Root Beer, by imposing territorial boundaries in the Delaware Valley Area. They contend that such vertical restrictions are a *per se* violation of the Sherman Act; and this factual situation is completely covered by the law and factual situation presented in the case of United States v. Arnold Schwinn and Company, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The Plaintiff also contends

that the factual situation in *Schwinn* is extended by United States v. Glaxo Group Limited, 302 F.Supp. 1 (D.D.C. 1969).

Before discussing the present factual situation as related to the most recent cases, a short history of vertical integration is warranted. Vertical integration or restriction is a term that first finds itself in the legal terminology of antitrust cases in United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947). The Supreme Court said at 227, 67 S.Ct. at 1565:

> The fact that these restraints occur in a setting described by the appellees as a vertically integrated enterprise, does not necessarily remove the ban from the Sherman Act. The test of illegality under the Act is the presence or absence of an unreasonable restraint on interstate commerce. Such a restraint may result as readily from a conspiracy among those who are affiliated or integrated under common ownership as from a conspiracy among those who are otherwise independent.

The fact situation in *Yellow Cab* is similar to many of the other cases in which vertical restrictions have been alleged against the defendant, i.e. the defendant has attempted to retain the immediate control of a product after he has sold it to a distributor by restricting the sales of the distributor.

▆ The Supreme Court in attempting to give guidelines as to the legality of vertical integration under the Sherman Act stated in United States v. Paramount Pictures, 334 U.S. 131, 174, 68 S.Ct. 915, 92 L.Ed. 1260 (1947) that there are two considerations that must be taken into account in analyzing vertical restrictions or integration. First, the purpose or the intent with which vertical integration was conceived and second the power it creates in the attendant purpose or intent. Thus, this Court feels that it is required to look behind the facts as presented in an attempt to determine the intent of the corporations involved. The best way this Court knows of determining intent is to question and examine the witnesses themselves as only in that manner can innuendos, nuances of meaning, and credibility be determined by the Court in the trial of the facts.

In the case of the United States v. Columbia Steel Co., 334 U.S. 495, at 527, 68 S.Ct. 1107 at 1124, 92 L.Ed. 1533 (1947), the Supreme Court looked into

> . . . we conclude that the so-called vertical integration resulting from the acquisition of Consolidated does not unreasonably restrict the opportunities of the competitor producers of rolled steel to market their product. We accept as the relevant competitive market the total demand for rolled steel products in the eleven-state area; over the past ten years Consolidated has accounted for only 3% of that demand, and if expectations as to the development of the western steel industry are realized, Consolidated's proportion may be expected to be lower than that figure in the future. Nor can we find a specific intent in the present case to accomplish an unreasonable restraint . . .

The Court was looking at the effect of vertical integration in the *Columbia* case, and was attempting to determine if there was an unreasonable restraint on Interstate Commerce by looking at competitive markets. From an analysis of the entire facts in the case and after a complete trial was held on the facts, the Supreme Court was able to state that there was no violation of the Sherman Act through vertical integration as the territorial restrictions had little impact on the competitive market.

The question before this Court is whether there is a *per se* violation of the Sherman Act by means of vertical restrictions or integration. In White Motor Company v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963), the Supreme Court refused to classify vertical territorial limitations as

a *per se* violation of the Sherman Act. The Court said at 263, 83 S.Ct. at 702:

"Horizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling of competition. A vertical territorial limitation may or may not have that purpose or effect. We do not know enough of the economic and business stuff out of which these arrangements emerge to be certain. They may be too dangerous to sanction or they may be allowable protections against aggressive competitiors, or the only practicable means a small company has for breaking into or staying in business . . . and within "the rule of reason." We need to know more than we do about the actual impact of these arrangements on competition to decide whether they have such a "pernicious effect on competition and lack . . . any redeeming virtue" (Northern Pacific Railroad Co. v. United States, *supra*, 356 U.S. 1, p. 5, 78 S.Ct. 514, 2 L.Ed.2d 545) and therefore should be classified as *per se* violations of the Sherman Act.

Although the *White Motor* case, *supra*, was decided prior to *Schwinn, supra*, which is the Supreme Court's latest ruling on vertical integration, its analysis of the rule of reason to be applied in certain situations remains the law. The *Schwinn* case, *supra*, and its extensions indicates in what situations a court is permitted to grant summary judgment if there is a *per se* violation of the Sherman Act by means of vertical territorial restrictions.

■ In *Schwinn, supra*, the Supreme Court did not rule that all vertical territorial restrictions are *per se* illegal. The Supreme Court found that part of the Schwinn distribution plan was a *per se* violation of the Sherman Act while another part of the Schwinn plan was not a *per se* violation of the Sherman Act. If the manufacturer retains or attempts to retain dominion or control over its product upon sale and delivery

to an independent distributor, then this Court following the reasoning in *Schwinn, supra*, would have to grant Summary Judgment in this case as there would be a *per se* violation of the Sherman Act. However, the Supreme Court applied the rule of reason to the situation where the delivery of bicycles to distributors who were indistinguishable from salesmen or agents of the manufacturer and found such deliveries as not violative of the Sherman Act.

The factual situation before this Court is somewhat unique because the contract for the sale of the syrup to "Pepsi" is not what is considered the average run of the mill sale by a manufacturer with the parting of dominion and control over the product. There is a sale of syrup which is under a trademark and inherently there must be some control of the ingredients of a finished product which is sold under a label owned by the defendant manufacturer. Since this case differs from *Schwinn* and *Glaxo, supra*, where finished products were sold, the Court feels there may be a factual distinction. However, it will not deny the Motion for Summary Judgment on the basis that there is not a *per se* violation of the Sherman Act, but will deny the Motion because there are outstanding factual questions enumerated more fully below. There may well be a violation of the Sherman Act because of an attempt to limit competition or attempt to gain control of a particular marketing area or for some other reason, but this Court feels that this information must be brought out during a trial in order for it to apply the rule of reason as set forth by the Supreme Court of the United States.

### III. OUTSTANDING FACTUAL QUESTIONS

The United States Supreme Court stated in Poller v. Columbia Broadcasting System, Inc., et al., 368 U.S. 464 at 473, 82 S.Ct. 486 at 491, 7 L.Ed.2d 458 (1962):

We look at the record on summary judgment in the light most favorable

to Poller, the party opposing the motion, and conclude here that it should not have been granted. We believe that summary procedures should be used sparingly in complex anti-trust litigation where motive and intent play leading roles. The proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice."

This Court finds that the evidence of the affidavits and depositions in this case viewed in a light most favorable to the defendant "Beverages" prevents it from entering a Summary Judgment Order for the Plaintiff on Count 1. There are factual questions which remain unanswered. First, the Court feels that it could not enter a Summary Judgment because there is an issue of the language in the actual contract between "Pepsi" and "Beverages." In Article II, Section 11 of the contract it is contended that the following statement is in itself a violation of the Sherman Act: "BOTTLER shall use his best efforts to sell HIRES within TERRITORY and not deliver or sell HIRES outside of TERRITORY." This statement is claimed by "Beverages" to be a best efforts clause but best efforts modifying both the first and second clause which is separated by the word "and". "Booth" on the other hand claims that the best efforts only modified the first clause and the second clause is a territorial restriction which is a *per se* violation of the Sherman Act. This statement again is one in which the rule of reason must be applied for interpretation. The actual activities of the Bottler must be brought out in a trial in order for the Court to decide what is the effect of the territorial agreement. The mere words in the above statement belie the issue which is the intent behind the territorial restrictions. At this time the Court does not feel it wise to interpret this clause without having testimony from both sides explaining its exact purpose.

Second, there is the question of the existence of a sub-franchise agreement between "Booth" and "Pepsi". This sub-franchise agreement is in dispute between the two parties. Consequently, the Court cannot adduce from the depositions and affidavits what is the exact stature of this sub-franchise agreement. If there were a sub-franchise agreement between "Booth" and "Pepsi", might "Booth" not have violated that agreement by not complying with the terms and thus cause their own demise? Or, maybe "Booth" gave a lackluster performance which would necessitate a termination of the sub-franchise agreement, and thus there would be no violation of the Sherman Act. Axiomatic to the above questions is standing. What standing does "Booth" have to sue civilly if they had no franchise agreement or other connection with Hires Root Beer distribution in the Delaware Valley and went out of business because of their own mismanagement? The Court recognizes that there may have been a valid sub-franchise agreement which was reneged upon by "Pepsi". If so, this would add credence to the position of "Booth".

Finally, there is a major question concerning the soft drink industry as compared to other industries, as to whether delivery of the syrup is in actuality a sale in which dominion and control is lost or must the manufacturer maintain certain necessary controls over the syrup as he is the owner of the trademark and the one who has the ultimate responsibility for the trademark product whose label is owned by him.

## IV. OTHER ARGUMENTS

There are two other arguments presented by the Plaintiff in his Brief which were briefly touched upon in oral argument. First, that the franchise agreement between "Beverages" and "Crush" and the "Bottlers" demon-

strates horizontal restrictions as it is the apparent policy of the two defendants to have only one bottler to a territory throughout the United States. Although market division agreements between competitors have been declared illegal by the Supreme Court (See United States v. Addyston Pipe and Steel Co., 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899) and its progeny), this Court feels that many facts have to be developed as to whether there is an actual agreement among competitors to eliminate the competition. The depositions and affidavits have presented limited information to the Court for a determination of such horizontal restriction and the Court finds at present little merit in this argument for a Motion for Summary Judgment.

Finally, the plaintiff contends that there is a refusal to deal with them by the defendants, which constitutes a group boycott and a concerted refusal to deal. Again, clarification must be made in this case based upon evidence presented at trial to establish whether there is a refusal to deal or whether this distributorship-manufacturer relationship is proper within the framework of the Sherman Act.

## V.  MOTION TO DISMISS

Defendants "Beverages" and "Crush" have petitioned this Court to dismiss the suit as to count 3 of the Complaint which refers to a violation of section 7, Clayton Act, 15 U.S.C. § 18. That section of the Clayton Act refers to the acquisition of corporations by another corporation in an attempt to gain competitive advantage or monopolization.

Defendants "Beverages" and "Crush" contend that they are observers in this part of the Complaint and have not involved themselves at all in acquisitions of any company that is involved in the Complaint. They also contend that they are not mentioned in the Complaint as far as count 3 is concerned and nowhere are they alleged to be an acquiring corporation. The Defendants cite a number of cases but do admit in their Brief that no Court has ruled expressly that a corporation which is not a party to an acquisition cannot be a defendant to an action based on section 7 of the Clayton Act.

The Plaintiff, on the other hand, claims that they have sufficiently included "Beverages" and "Crush" in their Complaint as far as the allegation of a violation of section 7 of the Clayton Act. The Court recognizes that paragraph 26 of the Complaint incorporates by reference paragraphs 2 through 5 and 7 to 21 of the Complaint. In paragraph 15 of the Complaint, there is a contention that "Beverages" and "Crush" were involved in the acquisition of defendant, Canada Dry Delaware Valley Bottling Company by "Pepsi". Although there is no question that "Beverages" and "Crush" and "Booth" were not in competition directly, there is an indication that there may have been some involvement between "Beverages" and "Crush" to eliminate "Booth" from the competitive marketplace. It is alleged that "Beverages" although not necessarily by way of direct interest was involved in the acquisition of Canada Dry Delaware Valley Bottling Company by "Pepsi". If this can be proved by the plaintiff "Booth" then there is a question for the trier of fact as to the extent of their liability.

For the reasons stated above the Court will deny the Motion of defendants "Beverages" and "Crush" to dismiss count 3, of the above captioned Complaint as to them alone.