**GOOD INVESTMENT PROMOTIONS, INC., Plaintiff-Appellee,**

v.

**CORNING GLASS WORKS, Defendant-Appellant.**

**No. 73–1652.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1973.

Decided March 28, 1974.

George I. Meisel, Cleveland, Ohio, for defendant-appellant; Squire, Sanders & Dempsey, Cleveland, Ohio, on brief; R. Bruce MacWhorter, Shearman & Sterling, New York City, Paul D. Cullen, Corning Glass Works, Corning, N. Y., of counsel.

Harlan Pomeroy, Cleveland, Ohio, for plaintiff-appellee; Jonathan E. Thackeray, Baker, Hostetler & Patterson, Cleveland, Ohio, on brief.

Before EDWARDS and PECK, Circuit Judges, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

In October of 1967 the plaintiff-appellee Good Investment Promotions, Inc. (hereinafter "Good Investment") filed a two-count complaint charging the defendant-appellant Corning Glass Works (hereinafter "Corning") with (1) breach of contract and (2) violations of certain federal antitrust laws. Upon Good Investment's motion for summary judgment and after receiving pleadings, depositions, answers to interrogatories and affidavits, the District Court in January of 1973 granted summary judgment on the second count by finding a per se violation of § 1 of the Sherman Act under United States v. Arnold,

Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). The Court later amended its order to include the requisite determination under 28 U. S.C. § 1292(b) and this Court granted Corning's petition for permission to appeal, filed pursuant to § 1292(b).

The relevant facts are as follows. Among the products which Corning manufactures is Corning Ware, a patented, vitrified cooking ware which is marketed primarily through 270 wholesale distributors who in turn sell to retailers such as hardware, discount and department stores. Corning Ware is also sold directly to selected trading stamp companies.

Good Investment is primarily engaged in trading stamp promotions, particularly for supermarkets. Retail customers can obtain designated merchandise by redeeming at a local Good Investment trading stamp office the Good Investment stamps given by retailers with purchases. In addition, Good Investment operates what it terms its Blue Ribbon Bonus Coupon Program for supermarkets whereby coupons are punched as purchases are made and ultimately a sufficiently punched coupon can be redeemed for merchandise displayed at the supermarket.

Corning has apparently been doing business with Good Investment, as well as other trading stamp companies, for many years. However, Corning asserts that except for two occasions, it has not participated in any coupon program as a matter of company policy. Those occasions were (1) a six-month period in 1964 and (2) in 1966 when the contract sued upon here obligated Corning to supply its wares to Good Investment for participation in the Blue Ribbon program. Corning characterizes each occasion as an experiment designed to allow the company to appraise its policy prohibiting participation in coupon programs. On this most recent occasion, however, Corning claims that it considered the experiment limited to the Borman food stores in Detroit and that

when it found that Good Investment was unilaterally expanding the program to other supermarkets, it terminated the contract, although it continued to supply promotions which are already sold and purchased left-over stock held by Good Investment. Claiming that preferential terms and conditions were extended to Good Investment in order to conduct the test, Corning states it merely refused to extend the special terms beyond the original contract.

Good Investment, however, emphasizes this broad language of the Supreme Court in *Schwinn:* "Once the manufacturer has parted with title and risk . . . over the product . . . his effort thereafter to restrict territory or persons to whom the product may be transferred . . . is a per se violation of § 1 of the Sherman Act." 388 U.S. at 382, 87 S.Ct. at 1867. Good Investment characterizes itself as a distributor and maintains that once it purchases a product directly from the manufacturer Corning, Corning is prohibited from restricting Good Investment's alienation of that product.

As stated earlier, the District Court found that upon these facts a per se violation of the antitrust laws had occurred and, of course, when properly supported by the record, the granting of summary judgment is proper. *See*, White Motor Co. v. United States, 372 U.S. 253, 83 S. Ct. 696, 9 L.Ed.2d 738 (1963). But although summary judgment is a valuable tool in achieving the expeditious adjudication of causes, it is a tool which this Court has recognized is to be used "sparingly in complex antitrust litigation." Daily Press, Inc. v. United Press International, 412 F.2d 126, 128 (6th Cir. 1969), cert. denied, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453, citing Poller v. Columbia Broadcasting Co., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Accordingly, we must scrutinize the record with particular care.

In looking to the record, we first turn to the District Court's finding that Corning's conduct in these circumstances

constitutes, per se, an unreasonable restraint of trade. The District Court principally relied upon the following language in *Schwinn*:

"Under the Sherman Act, it is unreasonable *without more* for a manufacturer to seek to restrict and confine areas of persons with whom an article may be traded after the manufacturer has parted with dominion over it. . . . Such restraints are so obviously destructive of competition that their mere existence is enough. If the manufacturer parts with dominion over his product or transfers risk of loss to another, he may not reserve control over its destiny or the conditions of its resale." 388 U.S. at 379, 87 S.Ct. at 1865. (Emphasis supplied.)

In our view, the District Court attached insufficient importance to the phrase "without more."

It is axiomatic that principles of law must be read in light of the facts and circumstances of the case from which they are drawn. It is also relevant to state that the reason that summary judgment is used with considerable caution in antitrust cases is that oftentimes only a thorough inquiry into the facts and attendant business circumstances can substantiate whether a restrictive course of conduct poses antitrust violations. With this in mind, we proceed to examine the consideration that the District Court gave to the *Schwinn* phrase "without more." We parenthetically note that *Schwinn* is a case dealing with territorial and customer restrictions upon a distributor by a manufacturer and that the instant case contains no allegations of territorial restrictions.

In contrast to the instant case, the record in *Schwinn* " . . . elaborately sets forth information as to the total market interaction and interbrand competition, as well as the distribution program and practices." 388 U.S. at 367, 87 S.Ct. at 1859. Here the record is devoid of any information from which it may be determined that ". . . firm and resolute [insistence] upon observance of . . . customer limitations" was required by Corning, such as was the situation in *Schwinn*. The state of the record achieves greater importance in view of Corning's claims that it merely terminated an agreement involving unusual commitments by it and that the termination did not limit any resale rights Good Investment may have on goods it purchased from Corning for the coupon program. According to Corning, Good Investment continues to use cooking ware manufactured by Corning's competitors and may still purchase its products from regular Corning distributors. Consequently, it would appear that these factual disputes must first be resolved, and findings of fact should be made concerning the nature of the coupon program and the nature of the competitive market involved.

This case may present a *Schwinn* situation, but in our view the present state of the record does not support that conclusion. We conclude that this case does not present any viable antitrust issues to us since certain factual disputes remain unresolved and in our view resolution of those disputes is at least necessary before the District Court can decide the merits of Corning's arguments that its refusal to supply its products beyond an experimental appraisal program and at favorable prices and terms of sale does not present a *Schwinn* customer restriction.

The judgment of the District Court is reversed and the cause is remanded.