**AKRON TIRE SUPPLY COMPANY,**
**Plaintiff,**

v.

**GEBR. HOFMANN KG et al.,**
**Defendants.**

**No. C 74–13.**

United States District Court,
N. D. Ohio, E. D.

Oct. 25, 1974.

Supplemental Opinion Jan. 22, 1975.

and the defendants. This opinion will concern itself with these matters.

## I. FACTUAL BACKGROUND

This action was commenced in an Ohio state court and alleged a contract breach and violation of Ohio's anti-trust laws. Plaintiff Akron Tire Supply ("ATS") was suing two German corporations, Gebr. Hofmann KG ("Hofmann-Darmstadt") and Dionys Hofmann Gmbh ("Dionys Hofmann"), as well as Hofmann Corporation, a New Jersey corporation, and FMC Corporation, a Delaware corporation. The matter was removed to this Court due to the diversity of the parties whereupon plaintiff sought and was granted leave to amend its complaint. The claims now include a request for declaratory and injunctive relief, and damages alleging breach of contract, unfair trade practices, and Sherman Act anti-trust violations.

The facts essentially are these:

In the spring of 1969, representatives of Hofmann-Darmstadt began negotiations with ATS to develop an arrangement whereby ATS would sell the Hofmann wheel balancing device. (This machine is used to balance automobile tires.) The efforts were successful and ATS began developing a market for the Hofmann balancer.

On April 8, 1970, an agreement was entered into setting forth the relationship between the parties but in this agreement Hofmann-Darmstadt had been replaced by Hofmann Corporation, a wholly-owned subsidiary. The contract was entered into in Akron. Under the terms of the agreement, it would be effective for two years with renewal possible.

On April 8, 1972, ATS and Hofmann Corporation attempted to negotiate a new agreement. It is at this point that what had apparently been a successful business relationship began to dissolve. All of plaintiff ATS's claims concern this 1972 contract and involve conduct which arose after that date.

With this brief statement of the facts, which will be supplemented in the fol-

Mack D. Cook, II, Akron, Ohio, for plaintiff.

John M. Glenn, Charles F. Scanlon, Akron, Ohio, Edward R. Brown, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

There are a number of motions pending, filed on behalf of both the plaintiff

lowing discussion, let us consider the pending motions.

## II. DEFENDANTS' MOTION TO DISMISS

Hofmann-Darmstadt and Dionys Hofmann have moved this Court for a dismissal of the claims against them, arguing that the Court lacks personal jurisdiction over them.

The Ohio legislature enacted Ohio Revised Code § 2307.382 to give the courts of this state jurisdiction over nonresidents whose conduct had an effect within the state.

■ Plaintiff ATS asserts that this Court does have personal jurisdiction under this statutory provision. It is well established that District Courts may utilize state jurisdictional and service of process devices but that in so doing, must apply them as would a court of that state. Mattgo Enterprises v. Aaron, 374 F.Supp. 20 (S.D.N.Y.1974).

The Court of Appeals for the Sixth Circuit considered this very jurisdictional provision in In-Flight Devices Corp. v. Van Dusen, 466 F.2d 220 (1972) and determined that it had been the legislature's intent to exercise this "long-arm" jurisdiction as far as the Due Process Clause of the Constitution would allow.

In Van Dusen, the Court of Appeals reaffirmed a three-pronged test for determining whether the assertion of jurisdiction was proper:

> In an effort to focus the case by case inquiry which must be made by the federal courts in considering the due process limits of a 'long-arm' statute, this Court has adopted a three-fold mode of analysis in jurisdictional cases where jurisdiction is predicated upon a single act of the defendant.
>
> > 'First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences

caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.' Southern Machine Co. v. Mohasco Industries, Inc., [6 Cir.], supra, 401 F.2d [374], at 381. Van Dusen, at 226.

The Court further observed that there could be no single test which would determine whether Due Process requirements had been satisfied. Thus in applying the test, "courts must consider each long-arm question in relation to traditional notions of fair play which mark the outer limits of due process." at 236.

■ The Court did, however, stress the need for purposeful activity within the forum. This is the essential factor. This activity can be carried out through agents, however, and it does not require the physical presence of the person within the forum Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151 (5th Cir. 1974); Sparrow v. Goodman, et al., 376 F.Supp. 1268 (W.D.N.C.1974).

■ A second key requirement is that the activities in the forum must be related to the dispute; mere presence unrelated to the cause of action does not furnish a basis for asserting "long-arm" jurisdiction. Mattgo Enterprises, Inc. v. Aaron, 374 F.Supp. 20 (S.D.N.Y.1974). Thus, past activities do not afford a basis for this type of jurisdiction unless they affect directly the issues in the suit.

■ Neither does the mere presence of a subsidiary within the jurisdiction furnish a basis for exercise of the state's "long-arm," but is rather but a factor to be evaluated and then considered in relation with the other Due Process requirements. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Fisher v. First National Bank, 338 F.Supp. 525 (S.D.Iowa 1972).

■ There is well-established, then, a modern trend towards examining the

realities of the situation, ignoring the facial appearance. Champion Spark Plug Co. v. Karchmar, 180 F.Supp. 727 (S.D.N.Y.1960). This is the approach the Court shall take in this case.

█ The Court finds that jurisdiction over Hofmann-Darmstadt is proper, but that jurisdiction over Dionys Hofmann is not. Taking the latter first, there is not the slightest indication of any involvement of Dionys Hofmann in Ohio. There is no indication of a substantial relationship between Dionys Hofmann and Hofmann Corporation. The sole basis for jurisdiction is the potential liability of Dionys Hofmann as a general partner of Hofmann-Darmstadt. The Court finds that under *Van Dusen, supra,* such a thread is too tenuous to allow assertion of jurisdiction and, therefore, Dionys Hofmann is dismissed as a party in these proceedings.

█ As to Hofmann-Darmstadt, however, it is established that its president was also president of Hofmann Corporation during the period relevant here. Affidavit of Wayne L. Carter, Plaintiff's Statement in Opposition to Motion to Dismiss. The Carter affidavit further indicates that Hofmann-Darmstadt was an active participant in negotiations for the 1972 agreement and that in 1973, Mr. Hofmann himself visited Akron to discuss the financial situation between his companies and ATS. (There is a strong indication that Hofmann Corporation is little more than "agent" for Hofmann-Darmstadt.) There is also present here direct involvement by Hofmann-Darmstadt. Looking at the totality of the conduct here, the Court finds that under the three-prongs of Van Dusen, there has been a sufficient showing made of purposeful conduct within the forum related to the subject matter in issue, and with an intended effect in Ohio, so that assertion of jurisdiction over Hofmann-Darmstadt does not offend Due Process. Its motion to dismiss is denied.

### III. DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION

Included in the agreement of April 8, 1972, one of two contracts in issue in the First Claim of the Amended Complaint, is a clause making referrable to arbitration "(a)ny dispute arising out of or in connection with this contract." Defendants contend that this clause requires a stay under 9 U.S.C. § 3 and arbitration of issues herein, specifically the Third Claim of the Amended Complaint which alleges the failure of the defendants to pay plaintiff sums owed pursuant to the contract of 1972. The Court notes that the claim as stated is only collectible if the contract cited was in effect at that time. And such a determination is the substance of the First Claim; i. e., a declaration as to which contract if any, was in effect between the parties during that period.

█ At the outset, let it be noted that courts are in general favorably disposed towards arbitration clauses and will normally enforce them. This is true even in cases in which it is alleged that the contract is illegal, or was fraudulently obtained. Hamilton Ins. Co. v. Republic National Life Ins. Co., 408 F. 2d 606 (2nd Cir. 1969). There are however special areas of the law in which the use of arbitration clauses and the recognition of their binding effect is viewed unfavorably. In Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held it improper to give effect to an arbitration clause when the Securities Exchange Act was drawn in issue since the implementation of arbitration in such instances failed to give the plaintiff adequate protection. Similarly in cases in which anti-trust claims were involved, arbitration of those claims has been deemed improper Cobb v. Lewis, 488 F.2d 41 (2nd Cir. 1974); Helfenbein v. International Industries, Inc., 438 F.2d 1068 (8th Cir. 1971). It has not been found improper, however, to stay proceedings in cases wherein fraud in the inducement of the

contract was asserted, it having been found that arbitrators are competent to deal with such issues. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2nd Cir. 1959).

The issues in this particular case must be evaluated within the parameters of these principles. As already noted, there is a question in this case as to which contract was in effect. (First Claim.) There is a claim for relief based on allegations of interference with a contractual relationship. (Fourth Claim.) There are a series of anti-trust violations alleged. (Sixth Claim.) There are also claims relating to violations of state laws relating to deceptive practices, raised under the doctrine of pendent jurisdiction. (Seventh Claim.) And there is the claim for an amount alleged to be due and owing under a contract between the parties. (Third Claim.)

It is found that the Third Claim is properly the subject of arbitration. However, in order for arbitration to begin, the Court must first determine whether or not the 1972 contract was in effect during the period in question. Thus it is improper at this time to order arbitration of the issues in the Third Claim, and the Court will issue such an Order only after determining plaintiff's First Claim.

It is further noted that even if arbitration is ordered, there will be no stay in these proceedings. The other claims made by the plaintiff are not issues which an arbitrator may properly decide, nor do many of them arise from the contract in question. The Court will therefore proceed to deal with the other claims irrespective of the need, potentially, to refer the Third Claim to arbitration.[1]

It may be argued that the determination as to which contract was in effect (the First Claim) is a question which the broad arbitration clause in the 1972 agreement might encompass. In Prima

Paint Corp. v. Flood & Conklin, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) the Supreme Court ruled that it was proper for arbitration to be required when the issue was whether or not there had been fraud in the inducement of the contract in issue. This, however, is not the issue in this case. Here the defense raised is not that the party was fraudulently induced to enter the contract, but that no contract at all was made. This is analogous to the situation noted in 9 U.S.C. § 4, wherein the Court is to try questions relating to whether or not an agreement to arbitrate was made.

## IV. SUMMARY JUDGMENT ON THE FIRST CLAIM

Both parties have moved for summary judgment on the First Claim of the Amended Complaint. In that claim, plaintiff seeks a declaration from the Court as to whether two contracts existed between the parties from April 8, 1972 to April 7, 1974. Defendants argue that the claim is moot, or subject to arbitration. Plaintiff has filed an affidavit and several exhibits which support its contention that the April 8, 1972 was indeed a binding contract between the parties and continued in force throughout the period in question. Defendants do not contend, it appears, that this is incorrect, having filed no counter-affidavits and objecting to the declaratory relief sought by the plaintiff in the First Claim only on the grounds previously noted.

The Court finds the claim is not moot. The Third Claim, as noted earlier, is directly dependent on the contract of April 8, 1972, as is the Fourth Claim since there must be a contractual relationship existing before the claims raised therein could be asserted. The mere fact that injunctive relief, as sought in the Second Claim, is moot if of no moment insofar as declaratory relief is concerned. The issue of the arbitrability of the First

---

1. Such a procedure was recognized by the Court of Appeals for the Second Circuit in

American Safety Equipment Corp. v. J. P. Maguire and Co., 391 F.2d 821 (1968).

Claim has been dealt with in the preceding section and those views are adopted here. In short, the defendants' arguments are not persuasive.

 The affidavit of Waymon L. Carter, assistant treasurer of the plaintiff corporation, and the several exhibits attached thereto, along with PX1 and PX2 of the Amended Complaint, establish the existence of the April 8, 1972 contract between the parties. The Court finds that there is no substantial issue of material fact and, as a matter of law, plaintiff is entitled to a declaratory judgment that from April 8, 1972 through April 7, 1974, the contract of April 8, 1972 (PX1 of the Amended Complaint) was in full force and effect between the parties.

Thus, as was provided above in dealing with the motion for a stay pending arbitration, the Court finds that the Third Claim is properly referrable to arbitration and orders that the parties take action pursuant to the provisions of Paragraph 15 of the April 8, 1972 contract, to secure arbitration of the Third Claim. These proceedings, however, will not be stayed, for reasons noted previously in this opinion.

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

 The defendant Hofmann-Little Falls has moved for summary judgment on all but the Third Claim of the Amended Complaint. (As to the First Claim, this motion is now moot.) Plaintiff has opposed the motions. The motion is denied, the Court being unable to state at this point that there are no substantial issues of material fact, or that defendant Hofmann-Little Falls position is correct as a matter of law. These statements apply with equal effect to all of those remaining claims in which defendant seeks summary disposition except for the Second, Fifth and Eighth Claims, which plaintiff has sought to withdraw from consideration, and which withdrawal is now approved.

Briefly it must be noted that this is an extremely complex suit both in terms of the corporate relationships of the defendant Hofmann-Darmstadt and Hofmann-Little Falls, and in terms of the factual occurrences which are dealt with in plaintiff's claims. As such, summary judgment is a tool of limited value at this early stage. This Court has previously stated its view that "courts are loathe to grant a motion of summary judgment, particularly 'of a case of any complexity,'" F & J Enterprises, Inc. v. Columbia Broadcasting Systems, Inc., 373 F.Supp. 292, 297 (N. D. Ohio 1974) (although with a different result in that case). Here the discovery which the parties will obtain may indicate amendment of the claims or reshaping of the issues via summary judgment, but at this point no such action is possible and for that reason, the motion of defendant Hofmann-Little Falls must be and is, denied.

### VI. SUMMARY

Thus the Court orders that:

1. Dionys Hofmann Gmbh be, and hereby is, dismissed as a party to these proceedings.

2. Declaratory relief be entered as to the First Claim, holding that the April 8, 1972 agreement was a binding contract between the parties from April 8, 1972 through April 7, 1974.

3. The parties shall seek arbitration of the Third Claim herein, as provided in the 1972 contract.

4. The Second, Fifth and Eighth Claims are dismissed.

It is so ordered.

### MEMORANDUM OPINION AND ORDER

### SUPPLEMENTAL OPINION

Defendant FMC Corporation has moved for summary judgment on the first five claims for relief of plaintiff's amended complaint. A previous memorandum opinion (October 25, 1974) has

determined Claims 1, 2 and 3, leaving for consideration only Claims 4 and 5. These two claims are related, Claim 4 seeking damages for interference with contract rights while Claim 5 seeks injunctive relief stemming from the same allegations.

For reasons to be stated, defendant's motion is denied. The facts essentially are these:

Plaintiff and defendant Gebr. Hofmann KG entered into a contract on April 8, 1972 (see October 25, 1974 opinion) whereby defendant Hofmann granted plaintiff the right to distribute an automobile wheel balancing device and related equipment. Under the second paragraph of that agreement, Hofmann agreed that plaintiff would have the sole and exclusive distributorship for its equipment in a territory composed of the states of Ohio, Michigan, Kentucky, Virginia, West Virginia and Pennsylvania. There were also contained therein other grants of non-exclusive distributorships and plaintiff's right to sell in other states.

In its Fourth Claim, plaintiff asserts that defendants FMC and Hofmann conspired to interfere with plaintiff's rights under this agreement by selling and allowing the sale of Hofmann wheel balancing equipment within the territory assigned to plaintiff. The complaint alleges an intentional and willful interference with plaintiff's contract rights.

Defendant FMC argues that such an exclusive distributorship agreement is a *per se* violation of the Sherman Act, Section 1. In arguing its position, defendant FMC puts its case in this posture:

Assume for the sake of argument that plaintiff is able to establish that FMC induced Little Falls to violate the exclusive territorial distributorship provisions in the 4/8/72 contract, such inducement occurring among other things when FMC executed the 8/17/73 license agreement with full knowledge of plaintiff's exclusive territorial rights and with the intent from the very outset to violate these rights. FMC is nevertheless privileged to do so.

Motion of Defendant FMC for Summary Judgment, p. 13.

Support for this proposition is said to lie in United States v. Arnold Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L. Ed.2d 1249 (1967) and cases interpreting it. In *Schwinn*, the Supreme Court held unlawful *per se* restraints imposed by a manufacturer on a distributor which had the effect of restricting and confining areas of persons with whom an article might be traded after the manufacturer had parted with control. *See* Adolph Coors v. F.T.C., 497 F.2d 1178 (10th Cir. 1974); American Industrial Fastner Corp., et al. v. Flushing, 362 F.Supp. 32 (N.D.Ohio 1973). Defendant FMC contends that under the theory of *Schwinn* the agreement between plaintiff and Hofmann was illegal and that FMC was privileged to interfere with it. Moreover, it is argued that the holding in Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959) forbids the enforcement of sanctions, even assuming that defendant FMC was not wholly privileged. In *Kelly*, the Supreme Court determined that violations of the antitrust laws could be asserted as defenses in certain instances, basing its decisions primarily on equitable considerations.

There is, however, difficulty in applying those cases to the instant proceeding. The Court cannot agree that all vertical territorial restrictions are *per se* illegal. In this case, defendant Hofmann is the manufacturer and in its agreement with plaintiff, the manufacturer limited *itself*, not plaintiff. In *Schwinn, supra,* the manufacturer was seeking to restrict competition between competing distributors, not between itself and the distributor. The difference between this situation and *Schwinn* is vital.

The real test of vertical restrictions between a manufacturer and its distributor, which restrictions limit

the manufacturer in its dealings, is the traditional rule of reason. Edwin K. Williams & Co. Inc. v. Edwin K. Williams & Co.—E, 377 F.Supp. 418 (C.D. Calif.1974); cf. United States v. Topco Associates, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). If it can be demonstrated that there is a lawful main purpose for the restriction and that the restriction is fairly protective of the distributor's interests and does not unduly interfere with the public, it may be found that the restriction is not a violation of the antitrust laws. Bascom Launder Corp. v. Telecoin Corp. 204 F.2d 331 (2nd Cir. 1952), cert. den. 345 U.S. 994, 73 S.Ct. 1133, 97 L.Ed. 1401. Indeed, it may be demonstrated that in a situation like this one, where a manufacturer is apparently attempting to introduce a new product, that such a restriction gives the distributor confidence in undertaking the effort of developing a market for untried equipment and is pro-competitive. *Schwinn, supra.*

[redacted] The agreement not being *per se* unlawful, defendant FMC may be shown to have unlawfully interfered with plaintiff's contract rights. As the Supreme Court noted in *Kelly, supra,* it should not be the case that a person be able to obtain another's property without providing adequate compensation. If in fact defendant FMC is found to have committed a wrong, it should answer in damages. The question of the propriety of injunctive relief is a closer question, best left to another day after the case has been fully presented.

The Court of Appeals for the Sixth Circuit has expressed the view that summary judgment is a device to be used sparingly in antitrust cases:

> It is axiomatic that principles of law must be read in light of the facts and circumstances of the case from which they are drawn. It is also relevant to state that the reason that summary judgment is used with considerable caution in antitrust cases is that oftentimes only a thorough inquiry into the facts and attendant business circumstances can substantiate whether a restrictive course of conduct poses antitrust violations. Good Investment Promotions, Inc. v. Corning Glass Works, 493 F.2d 891, 893 (6th Cir. 1974).

*Combining* this general rule with the Court's view of the law and facts in this particular area of antitrust law, defendant's motion for summary judgment is denied.

This case is set for a pre-trial conference on February 27, 1975 at 9:30 a.m. Counsel should have firm discovery schedules ready for the Court's consideration, and to this end counsel should meet prior to the pre-trial.

It is so ordered.