**Paul SKODA, Plaintiff,**

v.

**A & W DISTRIBUTING CO., Defendant.**

**No. S–75–42–CA.**

United States District Court,
E. D. Texas,
Sherman Division.

June 23, 1976.

R. J. Hagood, Jr., Doss, Thompson & Freels, Inc., Denison, Tex., for plaintiff.

John H. Martin, Jerry L. Buchmeyer, Thompson, Knight, Simmons & Bullion, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

Plaintiff, owner of a root beer stand in Denison, Texas, brought suit against A & W Distributing Company and A & W International, Inc. to enforce certain terms of its license contract. The agreement, in its relevant part,[1] purported to give the plaintiff the exclusive right to sell A & W Root Beer in fountain drink form in Denison, while the defendants agreed not to sell bottled A & W Root Beer in the area. The defendants, however, reserved the right to wholesale and retail the soft drink in canned form. It now appears that bottled root beer sold to major supermarket chains by the defendants has found its way into Denison stores. Plaintiff seeks to permanently enjoin the retail sales of bottled root beer by asserting the contract provision and cutting off the supermarkets' supply. He hopes defendants will be forced to place territorial resale restrictions on their sales of bottled root beer to supermarket chains.

The case was originally filed in the Fifteenth Judicial District Court of Grayson County, Texas. Defendant A & W Distributing Co. removed the case to this court on the basis of 28 U.S.C. § 1441(a).

The defendants have raised as their defense that to enforce the contract as proposed by plaintiff would result in a violation of the antitrust laws. *Kelly v. Kosuga,* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1958). Two theories underlie the defense: First, the defendants assert that the license contract restrictions which plaintiff seeks to specifically enforce would result in a vertical restraint—*per se* violation of § 1 of the

---

1. "I-B. Licensor expressly reserves the right to engage in the production, distribution and sale of A & W Root Beer in cans within the above described geographical territory both in the wholesale and retail markets. This reservation shall not include the right to distribute or sell A & W Root Beer in bottles. * * *

"VI-C. Licensor shall not sell or deliver any A & W Root Beer * * * to any person, firm or corporation for use within the above described geographical territory during the term this License Contract is in force and effect except in pursuance of paragraph I-B."

Sherman Act because of the territorial restrictions which would result.[2]  Second, enforcement of the restrictions on resale would amount to a horizontal restraint, also a *per se* violation, because defendants and plaintiff both sell the product to its ultimate user.

■ The plaintiff responds to the motion for summary judgment by urging that any restraints must be subjected to the "rule of reason" first enunciated in *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911).  If we were to find merit in plaintiff's position, summary judgment would be inappropriate because the court would need to examine the competitive impact of the contract terms, an examination which would necessarily involve the factual determination of a trial.  The parties have agreed to waive their opportunity for a hearing on the motion, and have submitted the issue on the strength of their briefs.

Because we find that the antitrust defense raised by the defendants, specifically the vertical restraint argument, is meritorious, summary judgment for defendants is proper.

■ It is in the defendants' claim that a vertical restraint would result from contract enforcement that plaintiff's suit fails.  Though the contract was a bargained-for agreement, the parties may not contract in derogation of the law.  As a result, its illegal provisions are unenforceable.

■ The leading case in the area of vertical restraints of trade, where a manufacturer imposes restrictions on distributors and others to which it sells, is *United States v. Arnold, Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).  In *Schwinn* the manufacturer sold bicycles to distributors for resale, while contemporaneously franchising agents to make sales on behalf of Schwinn.  The Supreme Court noted that it is usually legal for a manufacturer to select whom it desires as its distributors, absent any attempt to fix prices.  But when the manufacturer selects distributors and limits the territory in which they may sell, § 1 of the Sherman Act comes into play.  The Court was careful to distinguish between instances where the manufacturer sells its products to distributors, and cases where it retains title and dominion so that the distributor merely acts as its agent:

> (W)here a manufacturer *sells* products to his distributor subject to territorial restrictions upon resale a *per se* violation of the Sherman Act results.  \* \* \*  If the manufacturer parts with dominion over his product or transfers risk of loss to another, he may not reserve control over its destiny or the conditions of its resale. 388 U.S. at 379, 87 S.Ct. at 1865.

> Where the manufacturer retains title, dominion, and risk with respect to the product and the position and function of the dealer in question are, in fact, indistinguishable from those of an agent or salesman of the manufacturer, it is only if the impact of the confinement is 'unreasonably' restrictive of competition that a violation of § 1 results from such confinement, unencumbered by culpable price fixing. 388 U.S. at 380, 87 S.Ct. at 1866.

The *Schwinn* rule, applicable to the case at hand, boils down to this: If the franchise or distribution agreement contains a territorial restriction on sales, and the manufacturer sells its products to the distributors or other resellers without retaining dominion over or title to the product, the territorial restraint is *per se* illegal under § 1 of the Sherman Act.  On the other hand, if the franchise or distribution agreement contains a territorial restriction but the manufacturer does not sell its products, merely using its distributors as agents, the contract restriction is not illegal on its face, but will instead be subjected to a test of reasonableness.

■ Since summary judgment is to be used sparingly in complex antitrust litigation, *Good Investment Promotions, Inc. v. Corning Glass Works,* 493 F.2d 891 (6th Cir. 1974), the courts have been reluctant to apply the *Schwinn per se* rule to vertical territorial restrictions if they could find

2.  15 U.S.C. § 1.

some way to distinguish the facts or the applicable reasoning. In *Akron Tire Supply Company v. Gebr. Hoffman KG,* 390 F.Supp. 1395 (N.E.D.Ohio 1975), the plaintiff claimed that the defendant interfered with its rights under a distribution contract by allowing sales of certain equipment by other distributors within the territory assigned to the plaintiff. The defendant countered, as in the case before us, that to enforce the plaintiff's exclusive distribution rights would violate the antitrust laws. The court held that though in *Schwinn* the manufacturer had attempted to restrict competition between distributors, in *Akron Tire* the manufacturer contracted to restrict competition between itself and its distributors. Since no restraint was imposed on competing distributors, the rule of reason was found to be applicable, rather than *per se* illegality.

In *Booth Bottling Co., Inc. v. Beverages Internat'l, Inc.,* 361 F.Supp. 340 (E.D.Pa. 1973), the contract agreement which plaintiff sought to enforce was an exclusive distributorship for bottling Pepsi Cola in a specific territory. Since the defendant manufacturer sold only syrup to the plaintiff for mixture with other ingredients, and since the product was sold under a trademark, the manufacturer was not selling a finished product. The court, therefore, found that the defendant was justified in retaining some dominion or control over the formation of the finished product to protect its trademarked label. If in the case before us the plaintiff was seeking to prevent the defendants from selling syrup to others in its territory, rather than bottled drinks, *Booth Bottling* would be in point. However, plaintiff has failed to distinguish between preventing others from purchasing, mixing, and dispensing fountain root beer in Denison and stopping distributors from buying bottled root beer (a finished product) from the defendants and reselling it in the delineated territory. This distinction is

amplified by *Williams v. Independent News Co., Inc.,* 485 F.2d 1099 (3rd Cir. 1973). In that case the court mentioned that the *Schwinn* holding was to be limited to distribution schemes where manufacturers not only assigned territory but also articulated resale restrictions. The manufacturer was allowed to restrict to whom it would sell, but could not affect resales.

■ Finally, in *Good Investment Promotions, supra,* the court observed that in deciding *Schwinn* the Supreme Court had before it a complete record on market information and the anti-competitive effect of the practices under attack. In reversing the trial court's grant of summary judgment, it focused on the following language:

> Under the Sherman Act, it is *unreasonable without more* for a manufacturer to seek to restrict and confine areas or persons with whom an article may be traded after the manufacturer has parted with dominion over it. 388 U.S. at 379, 87 S.Ct. at 1865 (emphasis supplied).

The *Good Investment* court held that the use of the emphasized phrase "unreasonable without more" meant that a factual analysis of the market was required for a decision, so that the entry of summary judgment in this type of case would be inappropriate even if the *per se* rule later was found to have applied. We feel that in the case before us summary judgment is possible, however. The state of the record at this point is such that we have no trouble in delineating the specific product, market, and principles involved. Further, the Fifth Circuit has adhered to a strict interpretation and literal reading of *Schwinn, see Copper Liquor, Inc. v. Adolph Coors Co.,* 506 F.2d 934, 944 (5th Cir. 1975), and thus would not apply the "unreasonable without more" gloss of the Sixth Circuit to the case at hand.[3] Further, some courts have felt that the emphasized language was meant to apply, if at all, in cases more complicated and

---

**3.** Some courts have injected the requirement of evidence of strict enforcement of territorial allocations to sustain a judgment of vertical restraint *per se. Janel Sales Corp. v. Lanvin Parfums, Inc.,* 396 F.2d 398 (2nd Cir. 1968). As

we are dealing with the projected effects of a contract's enforcement, we must assume *arguendo* that should enforcement be ordered it would be carried vigorously out by the defendant.

of a different nature than simple territorial restrictions on the resale of a finished product. *See, Tripoli Company v. Wella Corporation*, 425 F.2d 932 (3rd Cir. 1970).

 The Court must conclude that summary judgment for the defendants is proper on the theory of a potential vertical restraint resultant from contract enforcement. The plaintiff seeks to have defendants impose resale conditions on distributors who buy a finished product from the manufacturer, just the restraint forbidden by *Schwinn*. Once defendants sell bottled root beer to a supermarket chain in Dallas, they may not prevent the chain from retailing those bottles through stores in Denison. Though the plaintiff buys A & W syrup for fountain formulation into a finished product sold under a trademark license, those to whom he seeks to prevent the defendants from selling for resale in Denison do not buy syrup, but instead purchase a finished product over which they have parted with all dominion, title, and control. To reiterate the distinction crucial to our decision here, the plaintiff does not buy a finished product, and since he mixes a beverage for resale under the A & W trademark, the defendants may retain some control over the quality of the end product and its marketing. But the supermarket chains buy bottled drinks free of any interest of defendants to oversee their final sale to the public. Bottled root beer unlikely will be changed in character or quality between sale to the supermarket chain and resale to the consumer. Thus, under the explicit holding of *Schwinn*, the defendants cannot control to whom or where the distributor resells the bottled soft drinks. A contrary result would violate § 1 of the Sherman Act. We are faced with the situation alluded to in *Williams v. Independent News, supra*, of a proposed assignment of territory coupled with resale restrictions which would be illegal *per se*. The resulting restraint would be imposed between sellers who buy from the manufacturer, not between the manufacturer and its distributors as was the case in *Akron Tire, supra*. The contractual provision sought to be enforced is illegal *per se* as a vertical restraint of

trade, *Adolph Coors Company v. F.T.C.*, 497 F.2d 1178 (10th Cir. 1974), and summary judgment on defendants' defense is proper, *Dobbins v. Kawasaki Motors Corporation, U.S.A.*, 362 F.Supp. 54 (D.Or.1973).

The defendants' contention that to prevent it from dealing in the Denison area directly or indirectly would result in a horizontal restraint of trade need not be passed upon in light of our conclusion regarding the potential vertical restraint. On the present record however, there is no evidence that the defendants deal directly with the consuming public in Denison, nor in any way compete with the plaintiff on its own market level in any way.

An Order will be entered consistent with this opinion.